| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------------x<br>IVAN TEXLER,<br>Plaintiff<br><br>-against-<br><br>THE NEW YORK CITY DEPARTMENT<br>OF EDUCATION, AND THE CITY<br>OF NEW YORK;<br>Defendants<br>---------------------------------------------------------------------x | 1:26-cv-01186-ENV-PK |

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

D. Christopher Mason
Mason Law, PLLC
11 Broadway, Suite 615
New York, NY 10004
Tel: 212-498-9691
Fax: 212-498-9692
Email: cmason@masonlawpllc.com

# TABLE OF CONTENTS


| | |
|---|---|
| TABLE OF AUTHORITIES | 3 |
| PRELIMINARY STATEMENT | 7 |
| BACKGROUND FACTS | 9 |
| STANDARD OF REVIEW | 10 |
| ARGUMENT | 10 |
| PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINES OF COLLATERAL ESTOPPEL OR RES JUDICATA | 10 |
| THE FIRST AMENDMENT RETALIATION CLAIM IS VALID | 17 |
| PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS MUST CONTINUE | 20 |
| CONCLUSION | 24 |

# TABLE OF AUTHORITIES

**Pages**

**Cases**

Aetna Ins. Co. v. Kennedy
301 U. S. 389, 393 (1937)……………………………………………………………..……20

Albunio v. City of New York
16 N.Y.3d 472, 477-78, 947 N.E.2d 135, 922 N.Y.S.2d 244 (2011)……………………26

AT&T Mobility LLC v. Concepcion
563 U.S. 333 (2011)……………………………………………………………………..…..15

Bermudez v. City of New York
783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011)………………………………………………26

Brandon v. Board of Education
635 F.2d 971, 973 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970,
71 L.Ed.2d 109 (1981)……………………………………………………....………25, 26

Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.
411 F.3d 306, 313 (2d. Cir. 2005)…………………………………….……………20

Burroughs v. Holiday Inn,
621 F.Supp. 351, 353-55 (W.D.N.Y. 1985)…………………….……………..………25

Carnley v. Cochran
369 U. S. 506 (1962)……………………………………..………………………19

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.
444 F. 3d 158, 167-68 (2d Cir. 2006)……………………………..………………..23

Courtemanche v. Enlarged City School District
686 F.Supp. 1025, 1032 (S.D.N.Y. 1988)…………………………………………..…25

Davis v. Goord
320 F.3d 346, 354 (2d Cir. 2003)………...……………………………………………23

Day v Moscow
955 F.2d 807 (2nd Cir 1992)…………………………………………………………..22

Dellatte v. Great Neck Union Free Sch. Dist.
448 Fed. Appx. 164 (2d Cir. 2012)..……………………………………………………..13

EEOC v Abercrombie & Fitch Stores, Inc.,
575 U.S. 768 (2015)……………………………………………………………18, 20

Espinal v. Goard
558 F.3d 119, 129 (2d Cir. 2009)……..…………………………………………………23

Felder v. Casey
487 U.S. 131, 108 S.Ct. 2302(1988)……………….…………….…………………25, 26

Harris v. City of New York
186 F.3d 243, 247–48 (2d Cir. 1999)……………………………………………………26

Johnson v. Zerbst,
304 U. S. 458, 464 (1938)……………………………………………………………..19

Jute v. Hamilton Sundstrand Corp.
420 F.3d 166, 173(2d Cir. 2005)…..…………………………………………………..21

Kirkland-Hudson v. Mount Vernon City Sch. Dist.
665 F.Supp.3d 412, 440 (S.D.N.Y. 2023)……………………………………………..16

Koerner v. State of N.Y.
62 N.Y.2d 442, 448 (1984)……………………………………………………………26

Kosakow v. New Rochelle Radiology Assocs.
274 F.3d 706, 734 (2d Cir. 2001)……………………………………………….………..20

Lightfoot v. Union Carbide Corp.
110 F.3d 898, 907 (2d Cir. 1997)………………………………...……………….…26

Littlejohn v. City of New York
795 F.3d 297 (2d Cir. 2015) ……………………………………………………..…21

Loeffler v. Staten Island Univ. Hosp., 582
56 F.3d 268, 278 (2d Cir. 2009)……………………………………………….…………25

Makinen v. City of NY
857 F3d 491, 495 (2d Cir. 2017)…………………………………………….………..25

Mandel v. County of Suffolk
316 F.3d 368, 384 (2nd Cir. 2003)………………………………………………………24

Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1
46 NY2d 450 (1979)…...…………………………………………………...…………18

Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al.
81 NY2d 446 (1993) …………………………..…………………...…………………18

Melnick v. City of New York
2011 WL 2650568, at *12 (S.D.N.Y. July 7, 2011)
……………………………………………………………………………………………19

Monell v. Department of Soc. Svcs.
436 U.S. 658 (1978)…………………………………...……………………………………13

Morris v. Lindau
196 F.3d 102, 110 (2nd Cir. 1999)…………………...……...……………………………………22

National Railroad Passenger Corp. v. Morgan
536 U.S. 101 (2002)…………………………………………………………...…………10

Ohio Bell Tel. Co. v. Public Utilities Comm'n
301 U. S. 292 (1937)……………………………..………………………………………18

Paschall v. Mayone
454 F.Supp. 1289, 1298 (S.D.N.Y. 1978)……………………...…………………………24

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
602 F.3d 57, 64 (2d Cir.
2010)………………………………………………………………………………..………12

Posr v. Court Officer Shield # 207
180 F.3d 409, 418 (2d
Cir.1999)…………………………………………………………………………………24

Rivera v. Cmty. Sch. Dist. Nine
145 F.Supp.2d 302,309 (S.D.N.Y.2001)…………………………………………………22

Ruotolo v. City of New York
514 F.3d 184, 188 (2d Cir.
2008)……………………………………………………………………………………..12

Shekhem' El-Bey v. City of New York
419 F.Supp.2d 546, 552 (S.D.N.Y. 2006)………………………..……………………22

Taylor v. City of New York
207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016)…………………………...………………..…25

U.S. v. Wells
347 F.3d 280, 285 (8th Cir. 2003)……………………………...…………………..…16

Vega v. Hempstead Union Free Sch. Dist.
801 F.3d 72 (2d Cir. 2015)………………………..…………………………….…19

Williams v. Allen
616 F.Supp. 653, 656-59 (E.D.N.Y. 1985)…………………………………………24

Williams v. NYCHA
872 N.Y.S.2d 27, 31–32 (1st Dep't 2009)………………………………….………25

**Statutes**

42 U.S.C. § 2000e-3(a) ……………………………………………………………………17

CPLR § 214(2)……………………………………………………………………………...22

FRCP Rule 8(a)(2)…………………………………………………………………………...9

FRCP Rule 12(b)(6) …………………………………………………………………………9

New York Educ. Law § 3020-a……………………………………..6,7,8,10, 11, 13, 15, 16, 18

New York Education Law §3020-a(3)(a)……………………………………………….11,15

New York Education Law §3813……………………………………………………………..21

NYCHRL……………………………………………………………8,16,20,,21,22, 23, 24

NYSHRL……………………………………………………………8,16,20,,21,22, 23, 24

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. …………………………...7

# PRELIMINARY STATEMENT

Plaintiff is a dedicated, accomplished, and devout Orthodox Jewish educator who devoted years of service to the students and community of the New York City Department of Education (hereinafter "DOE" or "Defendant"). His career was not derailed by any genuine professional failing, misconduct, or harm to students. Rather, it was sabotaged by Defendants' selective and discriminatory decision to wield the DOE's formal disciplinary machinery — specifically, charges pursuant to N.Y. Educ. Law § 3020-a — against him alone, based not on his conduct, but on his religious identity as an Orthodox Jewish man. The alleged misconduct underlying those charges — i.e. hugging and/or gifting students — reflects nothing more than the natural, well-intentioned warmth of a caring teacher toward the children in his charge. Crucially, the Principal of the school, and non-Jewish and non-Orthodox colleagues engaged in the identical conduct without consequence. Other Jewish but not orthodox Jews in his school remained silent in fear that the harassment seen thrown at Plaintiff would be given them as well. Plaintiff was the only Orthodox Jewish teacher at his school. He was the only one subject to these accusations and charges.

Defendants now move to dismiss Plaintiff's federal civil rights complaint, advancing several primary arguments that are legally meritless on their face. First, Defendants contend that Plaintiff's claims are time-barred by a one-year statute of limitations. That argument is flatly incorrect as a matter of law. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., is the governing federal statute, and it requires only that an aggrieved employee file a charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of an unlawful employment practice — not one year. New York is a deferral state, and the 300-day

period applies. Plaintiff filed his EEOC charge timely when his administrative remedies – the compulsive 3020-a and subsequent article 75 appeal – were exhausted and he was given a final decision. He received a Right to Sue letter, and commenced this action within 90 days thereof. His claims are therefore fully timely under applicable law.

Moreover, the continuing violation doctrine recognized by the Supreme Court in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), independently preserves claims arising from a pattern of discriminatory conduct. Second, Defendants contend that the §3020-a administrative proceeding precludes Plaintiff's federal and state civil rights claims. This argument is equally without merit. Congress expressly ensured that employees retain the right to pursue Title VII claims in federal court free from the preclusive force of state administrative proceedings, and New York courts have not extended such preclusion to NYSHRL or NYCHRL claims arising from the same discriminatory conduct. Both NYSHRL and NYCHRL have three-year statute of limitations for issues and claims arising out of the Constitution or in the public interest.

Defendants ask this Court to dismiss the claims of a religious minority employee who was singled out for punitive treatment that his secular colleagues faced not at all. The law does not permit employers to shield discriminatory conduct behind procedural defenses that are inapplicable on their own terms. Defendants' motion must be denied in its entirety, and this case must be permitted to proceed to discovery so that Plaintiff may demonstrate — through the full evidentiary record — the discriminatory animus that infected the DOE's decision to pursue disciplinary charges against him while leaving comparably situated non-Jewish employees untouched.

## BACKGROUND FACTS

Defendants' Motion To Dismiss is a thinly-veiled attempt to re-frame Plaintiff's case into something that it is not and redirect this Court's attention from the actions and behaviors of the Defendants. Defendants' papers ignore the four corners of Plaintiff's Complaint and disregard the premise that the detailed factual allegations should be accepted as true.

Plaintiff is a tenured teacher with twenty-four years of excellent service to the students of New York City. He is also an orthodox Jew male. American Jews bore brunt of religion-based hate crimes in 2025, FBI data shows in reports released this week (August 22, 2026; Israel365news). Additionally, a new report from the United Jewish Teachers, a New York teachers advocacy group, released Tuesday claimed to have cataloged at least 250 antisemitic and anti-Israel incidents in New York City public schools since Hamas' Oct. 7, 2023, attacks on Israel. The report, found that 64.8% of incidents consisted of verbal harassment, physical threats, assaults and hate symbols like swastikas. "The data compiled by United Jewish Teachers demonstrate that antisemitism remains a serious and ongoing problem in New York City Public Schools," United Jewish Teachers President Moshe Spern told the New York Post. ("NYC schools rack up disturbing 250 antisemitic, anti-Israel incidents since Oct. 7, 2023: scathing report", Carl Campanile, August 18, 2026). There is no reason to believe this same discriminatory environment did not exist in the years prior to 2026 during Plaintiff employment.

Plaintiff's Complaint successfully argues that he has been unfairly and unlawfully deprived of his Constitutional right to equal protection to work as an orthodox Jew and teacher in the public school system. His claims submitted in his Complaint have not been already adjudicated nor time-barred. Defendants' papers ignore the four corners of Plaintiff's Complaint and disregard the facts in the detailed factual allegations that should be accepted as true.

Plaintiff requests that each and every argument, cause of action, and background fact in his Complaint be incorporated in full into the arguments made here by reference.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must. contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the pleadings must contain enough facts to state a claim to relief that is plausible on its face." Dellatte v. Great Neck Union Free Sch. Dist., No. 10-cv-4348, 2012 WL 164078, at *1 (2d Cir. Jan. 20, 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The court must accept all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp**.**, 602 F.3d 57, 64 (2d Cir. 2010).

## ARGUMENT

### PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINES OF RES JUDICATA OR COLLATERAL ESTOPPEL

Defendants argue that Plaintiff's claims presented to this Court are barred by Collateral Estoppel and Res Judicata therefore Plaintiff's claims must be dismissed. This argument fails due to the fact that none of Plaintiff's claims were litigated or even discussed by the arbitrator in the 3020-a hearing, the Judge in the Supreme Court, nor any other trier of fact in any prior forum during the process that unfairly terminated Plaintiff. Plaintiff argued in the §3020-a arbitration and the Article 75 Appeal that Defendants' investigation was unfair and the testimony solely unsupported hearsay. The issues and facts supporting arguments on antisemitism, religious discrimination and retaliation were neither addressed nor even mentioned. See Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978); ("A Monell claim is a federal civil rights lawsuit that targets a local government entity itself for a constitutional violation, rather than just the individual employee who committed the act."). The decision by Arbitrator Cure in the §3020-a was pre-determined by Defendants. Termination was a pretextual outcome that hid the underlying religious discrimination and personal animus against Plaintiff.

Defendants, unwilling to reveal the real motive behind their actions below, argue in their Motion that Plaintiff's Complaint is part of a continuum of law based upon Plaintiff being a sexual predator, a completely false and defamatory label that will forever haunt Plaintiff and will keep him on the stigmatizing Problem Code to the DOE's. Defendants have total control over the charging process, including picking the arbitrator who would do their bidding out of a pool of arbitrators all hired by them, Defendants. Only in New York City is the right denied to charged employees pursuant to Education Law §3020-a(3)(a) - namely to participate in choosing the arbitrator for his/her §3020-a. The termination outcome is set before the hearing begins. Additionally, issues and claims that reach the Constitution or are in the public interest are not heard in §3020-a arbitration. Understanding Constitutional issues brought here is key to the

success of this Complaint. The Constitution refers to matters or disputes that require interpretation or application of constitutional principles, often involving rights, powers, or governmental authority. These issues typically arise in legal contexts where courts must decide how constitutional provisions apply to specific cases or situations. Federal statutory purpose defeats arbitration, even though the FAA normally favors arbitration. The key distinction:

- Preemption: federal law overrides *state* law.
- Inarbitrability: federal law overrides *private arbitration agreements*.

Federal preemption and subject-matter inarbitrability operate on different planes. Preemption arises under the Supremacy Clause and determines whether federal law displaces conflicting state rules, including state-law restrictions on arbitration. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). Subject-matter inarbitrability, by contrast, concerns whether Congress intended a particular federal cause of action to remain in court notwithstanding the FAA's pro-arbitration policy. The second distinction is argued in Plaintiff's case submitted here. Under subject matter inarbitrability, a dispute cannot be submitted to arbitration – as a matter of law – because it involves matters directly linked to the public interest. To some extent, subject-matter inarbitrability overlaps with the public policy exception to arbitration. But public interest considerations prevent the recourse to arbitration. Inarbitrability is a protector of the public interest and is an obstacle to unimpeded recourse to arbitration. Arbitration is a private dispute resolution process – arbitral proceedings are most often not open to the public and awards generally are not published.

Arbitration trades the protection of rights available in the constitutionally-sound but cumbersome public process of judicial litigation for the functionality and finality of private arbitral proceedings in which the arbitrator is the sovereign decider. Indeed, character and

credibility have no place in public interest litigation, except to color the proceedings to fit the pretextual outcome, as seen in this matter. The allegations in this case lead this Court to the same outcome. “[C]ourts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related.” See Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F.Supp.3d 412, 440 (S.D.N.Y. 2023.

This argument as applied to Plaintiff here includes:

- **Title VII claims**: Courts consistently hold Title VII claims are judicial unless the employee knowingly and voluntarily waives the right. The DOE’s and UFT’s forms do not constitute such a waiver.
- **§1983 claims**: §1983 claims are **not arbitrable** because Congress created a judicial enforcement mechanism with remedies unavailable in arbitration.
- **Duty of Fair Representation claims**: Federal labor-law DFR claims are judicial unless the employee consents to arbitration. Plaintiff did not, and §3020-a is compulsive, not voluntary arbitration. Plaintiff was given no choice but to submit to a §3020-a hearing process.

Thus, there is no Res Judicata or Collateral Estoppel applicable in this matter and the Motion should be denied in its entirety. The doctrine of res judicata bars claims that have either been litigated or that could have been litigated from being litigated again. The doctrine of collateral estoppel means that any issues that have been litigated cannot be litigated again.

The doctrines of res judicata and collateral estoppel often come into play when a subsequent case, similar to a case already adjudicated, is filed. The rationale behind the doctrines is that an issue or cause of action fully litigated should not be litigated again. Res judicata is often referred to as "claim preclusion". Collateral estoppel is often referred to as "issue preclusion".

Res judicata is raised when a party thinks that a particular claim was already, or could have been, litigated and therefore, should not be litigated again. When addressing a res judicata argument, a court will usually look at three factors. First, the court will consider whether there was previous litigation in which identical claims were raised, or in which identical claims could have been raised. The second factor to be considered is that the parties must be the same parties as those who litigated the original action. The third factor is that the original action must have received final judgment on the merits. None of these are present in this case.

Final judgment does not occur when the case is settled by the parties on their own, or where the judge decides a motion or makes some other determination that does not resolve the case based on the facts and evidence of the case. This means that the final judgment must concern the actual facts giving rise to the claim. Dismissal of a case because the court does not have subject matter jurisdiction, because the service of process was improper, because the venue was improper or because a necessary party has not been joined, for example, are not judgments on the merits. Grants of these types of motions to dismiss really have nothing to do with the facts, except that the litigation is precluded by a technicality. As such, subsequent litigation as to whether the defendant is liable would not be barred.

Collateral estoppel arises when the claim (cause of action) at the bar has not been litigated, but the exact issue that is now before the court has been raised and litigated in an earlier action or proceeding. Collateral estoppel is a bit different than res judicata, although the rationale is the same – it is a tool to prevent re-litigation of issues already litigated. See U.S. v. Wells, 347 F.3d 280, 285 (8th Cir. 2003): "The collateral estoppel doctrine provides that 'when an issue of

ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

The requirements that must be satisfied before the doctrine of collateral estoppel are similar to those for res judicata. First, the issues in the first and second litigation must be identical and must have been before a court. Here, the issues are not similar. Second, the issues must have been actually litigated. In arbitration, the issue religious discrimination was never litigated. Third, a final judgment must have been rendered, ultimately deciding the issue in question. Arbitrator Cure never decided the issue of religious discrimination.

In the matter brought here, there is no res judicata or collateral estoppel issue due to the lack of subject matter jurisdiction for either Arbitrator Cure or the Supreme Court to analyze issues or claims that involve a public interest. Section 3020-a Arbitration is not a Court, there is no Judge or jury, and rules of evidence, hearsay and other rules are relaxed to the point of being almost nonexistent. Arbitrator Cure was chosen for Plaintiff's case by the Department of Education, thus there was no wheel to turn for the appointment. Plaintiff had no say in choosing the arbitrator (§3020-a(3)(a)) and was not given his due process because Arbitrator Cure did not have subject matter jurisdiction to decide the Constitutional issues raised here. Arbitrators cannot grab subject matter jurisdiction out of thin air. Defendants do not distinguish between the arbitration and this Court, however this is a fatal flaw to their arguments for dismissal due to Res Judicata or Collateral Estoppel. By never bringing up a Constitutional issue – his religion – Defendants deliberately and intentionally concealed from Plaintiff the narrow focus of the Arbitration in order to get him removed from his job. (See EEOC v Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015) ("Rather than imposing a knowledge standard, the statute prohibits

certain motives, regardless of the state of the actor's knowledge. An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions. Title VII allows failure-to-accommodate challenges to be brought as disparate-treatment claims and gives favored treatment to religious practices, rather than demanding that religious practices be treated no worse than other practices.")

Fraudulent concealment of a secret waiver of the rights of tenured employees to the tenure law Education Law 3020-a(2)(a) by the NYC Department of Education cannot be sanctioned. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver", Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937). In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held "[p]resuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given. See Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450.

The fact that Plaintiff could not assert Title VII, NYSHRL, NYCHRL, discrimination or constitutional claims in the §3020-a Hearing allowed Defendants to conceal their religious animus for the Plaintiff and trample the State law protections of tenure. The Second Circuit has repeatedly held that preclusion does not apply where the administrative

forum does not permit the plaintiff to raise the federal claims at issue in the §3020-a hearing. Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 734 (2d Cir. 2001). The proceeding was limited to whether DOE's charges were supported by "just cause," not whether they were motivated by religious bias. Thus, the §3020-a findings do not resolve the question of discriminatory intent. (See EEOC v Abercrombie & Fitch Stores, Inc., U.S. Supreme Court No. 14-86, June 1 2015.)

Even if the arbitrator found "just cause," that determination does not resolve whether the DOE's actions were motivated by discriminatory animus, which is the central question under Title VII and the human-rights laws. See Vega v. Hempstead Union Free Sch. Dist. (2d Cir. 2015), 801 F.3d at 87 (discrimination claims turn on intent). A finding that Plaintiff allegex actions warranted termination does not determine whether the DOE selectively enforced rules against him because of his religion. Thus, the §3020-a decision has no preclusive effect on Plaintiff's claims. The Motion To Dismiss presented here by Defendants cannot be granted.

**PLAINTIFF HAS SUCCESSFULLY PLED**
**RELIGIOUS DISCRIMINATION AND RETALIATION**

Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against any . . . employee[] . . . because [that individual] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding." 42 U.S.C. § 2000e-3(a). In order to "establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Littlejohn v. City of New York, 795 F.3d 297, 315–16 (2d Cir.

2015). Protected activities include both "opposing discrimination proscribed by the statute and ... participating in Title VII proceedings." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173(2d Cir. 2005).

Defendants argue that Plaintiff's allegation that he experienced religious discrimination and retaliation is legally insufficient: "Plaintiff's retaliation claim fully misses the mark because, as the Complaint makes clear, Plaintiff did not engage in any protected activity prior to his termination on September 7, 2023." The fact that other staffers and the Principal of the school all hugged students and gave gifts, but were never charged is a prima facie religious discrimination . Plaintiff was charged with misconduct and has been labeled a sexual predator by doing the same thing as the Principal and other educators the only essential difference is that he was an orthodox Jew and they were not. Defendants support the idea that everyone had a good motive when they hugged children, but Plaintiff's motive was poor. But for Plaintiff's religion and gender, he would never have been charged.

The claims contained within the four corners of Plaintiff's Complaint go straight to the heart of a substantive discrimination claim. The very idea that a person's livelihood which is supposed to be determined through a fair evaluation of an educator's job performance, is denied in open and blatant retaliation for being Jewish is outrageous and unconstitutional in the widest sense. There is no reasonable interpretation of the actions by Defendant alleged within the Complaint that could or should be excused as negligence or mistake.

As detailed above, Defendants hid their animus towards Plaintiff personally and condemnation of the Jewish religion in general under the cloak of 3020-a charges for misconduct that Plaintiff did not know he committed. No one at his school suggested or gave him notice that what he was doing was inappropriate, until it was too late. Also, the language of the first graders

show that they were coached to talk about social media and not saying anything to Plaintiff about his “intentions”.

Plaintiff’s termination was pre-planned and part of a strategy to deny state and Federal laws and rights to certain tenured employees of the Department. Even if such a definition is up for debate, it is inapplicable in a motion to dismiss stage and a simple reading of the Complaint amply demonstrates that conscience shocking behavior has been sufficiently alleged to permit this cause of action to continue through to discovery as a matter of law. Defendants’ Motion To Dismiss must be denied.

Plaintiff was tenured and a teacher for twenty-four years. As such he was protected under the Taylor Law and the terms and conditions of his employment. Before he was terminated/taken off salary, Defendants were required to find probable cause for his alleged “misconduct”, and he was supposed to get notice of the consequences of his actions if he did not stop. He received nothing. In order to create a false probable cause claim where there were no facts or supporting evidence, Defendants created false evidence to present to Cure, who already knew the end-game outcome he was hired to support. The first graders testified about interpreting Plaintiff’s actions as sexually harassing not on their own but instead from reading social media posts. Defendants Exhibit A at pp 8-9

In order to establish a causal connection at the pleading stage, the "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354 (2d Cir.2003); see also Shekhem' El-Bey v. City of New York. 419 F.Supp.2d 546, 552 (S.D.N.Y.2006). The Second Circuit has no bright line for how close in time the adverse employment action must follow the protected activity in order to

sustain the causation element. Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F. 3d 158, 167-68 (2nd Cir. 2006) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir. 1999).

On a motion to dismiss, a reasonable inference of a causal connection is all that is required. See Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir.1999) ("[T]he plaintiffs pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect."); Rivera v. Cmty. Sch. Dist. Nine, 145 F.Supp.2d 302,309 (S.D.N.Y.2001). This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). A court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of [each] particular case [ ]," Espinal v. Goard. 558 F.3d 119, 129 (2d Cir.2009). Where a plaintiff asserts enough direct evidence of retaliatory animus to create a triable question of fact on the issue of a causal connection as here, a longer lapse between the protected speech and the adverse employment action does not necessarily "conclusively establish lack of causation." See Mandel v. County of Suffolk, 316 F.3d 368, 384 (2nd Cir. 2003). Here, Plaintiff successfully pled religious discrimination and retaliation, and the Defendants' Motion should be denied.

**NYSHRL and NYCHRL ARE VALID CAUSES OF ACTION**

Defendants have adopted an unlawful discriminatory policy and practice by imposing secret and different rules for employment upon Plaintiff and not others due to his orthodox Jewish faith, shown by his wearing a yarmulke in his school during the school day. The

administration of Plaintiff's school pursued a policy of making first graders fearful of Plaintiff solely due to his religion.

Plaintiff was harassed and retaliated against, terminated and otherwise adversely impacted, because Defendants refused to allow him to participate in the duties and responsibilities of his job. Defendants' actions violate the New York State and New York City Human Rights Laws under a disparate impact claim. The acts or omissions of Defendants were conducted within the scope of their official duties and employment under color of law. Indeed, the Defendants never informed him that he, a Jew, could not act the way everyone else did. They concealed their discrimination, and then retaliated against him and forced him into compulsory arbitration for "misconduct" that he was never told he committed. He was also placed on the Problem Code. Defendants never suggested to Plaintiff that he take his yarmulke off, nor did they try to stop staff from encouraging children to be afraid of Plaintiff. Administration could easily have stopped the harassment against plaintiff, but they did not do anything.

In 2005, the City Council amended the administrative code to emphasize the New York City Human Rights Law's (NYCHRL) uniquely broad and remedial purposes, and again in 2016 to clarify its intent to foster jurisprudence that maximally protects civil rights in all circumstances. Thus Constitutional rights must be reviewed "independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 56 F.3d 268, 278 (2d Cir. 2009) (internal quotation marks omitted); Albunio v. City of New York, 16 N.Y.3d 472, 477-78, 947 N.E.2d 135, 922 N.Y.S.2d 244 (2011) (requiring the NYCHRL to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible"); Makinen v. City of NY, 857 F3d 491, 495 (2d

Cir. 2017).

Defendants argue in their Motion that Plaintiff's NYSHRL and NYCHRL had to be dismissed because they were time-barred due to Education Law §3813 and a 1-year statute of limitation. New York State Human Rights Laws in New York have a 3-year statute of limitations for claims pursuant to a public interest and/or Constitutional issues. On November 17, 2023, Governor Hochul signed State Assembly Bill A00501 into law, extending the statute of limitations for discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL") from one year to three years.

New York's Notice of Claim requirements were applicable to §1983 suits in state court but not federal court prior to Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302. See, e.g., Brandon v. Board of Education, 635 F.2d 971, 973 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); Courtemanche v. Enlarged City School District, 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988); Burroughs v. Holiday Inn, 621 F.Supp. 351, 353-55 (W.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653, 656-59 (E.D.N.Y. 1985); Paschall v. Mayone, 454 F.Supp. 1289, 1298 (S.D.N.Y. 1978). Felder v. Casey noted that although the Supreme Court itself "ha[d] never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." See Felder. 487 U.S. at 140, 108 S.Ct. at 2307. In Brandon v. Board of Education, 635 F.2d at 973, a ruling was upheld that compliance with the state's notice-of-claim provision was not a precondition to the district court action. Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice. See Day v Moscow 955 F.2d 807 (2nd Cir 1992).

In federal court, NYSHRL and NYCHRL claims both carry a three-year statute of limitations, even when the Defendant is the NYC Department of Education and even when the underlying facts involve a 3020-a termination. This is not a "federal" statute of limitations — it is the state and city limitations period that federal courts apply when exercising supplemental jurisdiction over NYSHRL/NYCHRL claims. Under NYSHRL Federal courts apply CPLR 214(2) three-year limitations period for statutory liabilities. (*Koerner v. State of N.Y.*, 62 N.Y.2d 442, 448 (1984); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997); *Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999))

In NYCHRL NYC Admin. Code § 8-502(d) expressly sets a three-year period. *Taylor v. City of New York*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011); Williams v. NYCHA, 872 N.Y.S.2d 27, 31–32 (1st Dep't 2009) Defendants are confusing administrative deadlines – EEOC: 300 days; NYSDHR: historically 1 year, now 3 years – with civil action deadlines NYSHRL: 3 years; NYCHRL: 3 years. Federal courts uniformly apply these three-year periods to NYSHRL/NYCHRL claims brought alongside Title VII claims.

The 3020-a decision by Arbitrator Cure did not start the clock, as NYSHRL/NYCHRL claims can be filed within three years, and Plaintiff could not raise discrimination in the 3020-a. §3020-a arbitrators have no jurisdiction over constitutional or statutory discrimination claims. They cannot adjudicate Title VII, NYSHRL, or NYCHRL.The 3020-a proceeding does not shorten the statute of limitations. The civil action clock remains three years. Pretextual discipline (gifting/hugging students while others did the same) is classic evidence of discriminatory motive. The fact that Plaintiff was the only Orthodox Jew in the school strengthens the inference.

Thus, Plaintiff's NYSHRL and NYCHRL claims are timely. Defendants' Motion on this point must be dismissed.

## CONCLUSION

The motion should be denied because the state-law claims arise from the same operative facts as Plaintiff's federal constitutional claims and are properly before the Court under supplemental jurisdiction. For the reasons set forth above, Defendants' Motion to Dismiss should be denied in all respects and the Court should grant any other, further and different relief that it deems just and appropriate.

Dated: August 31, 2026
New York, New York

MASON LAW, PLLC
Attorney for Plaintiff
11 Broadway – Suite 615
New York, New York 10004
(212) 4989691

By: **/s/ D. Christopher Mason**
D. Christopher Mason, Esq.

**CERTIFICATE OF COMPLIANCE**

Counsel of Record for Plaintiff hereby certifies that pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the enclosed Opposition to Defendants' Motion To Dismiss is produced using 12-point Time New Roman type and, including footnote and excluding the cover page, captions, table of authorities, and table of contents contains approximately 6,159 words, which is less than the total words permitted by the rules of the Court. Counsel relies on the word county of the computer program used to prepare this brief.

Dated: August 31, 2026
New York, New York

MASON LAW, PLLC
Attorney for Plaintiff
11 Broadway – Suite 615
New York, New York 10004
(212) 4989691

By: **/s/ D. Christopher Mason**
D. Christopher Mason, E